UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

DOLGEN CORP., INC., DOLLAR
GENERAL CORPORATION, AND DALE
TOWNSEND                                                PLAINTIFFS

VS.                              CIVIL ACTION NO. 4:08CV22TSL-JCS

THE MISSISSIPPI BAND OF CHOCTAW INDIANS,
THE TRIBAL COURT OF THE MISSISSIPPI
BAND OF CHOCTAW INDIANS, THE HONORABLE
CHRISTOPHER A. COLLINS (IN HIS OFFICIAL
CAPACITY) AND JOHN DOE, A MINOR, BY AND
THROUGH HIS PARENTS AND NEXT FRIENDS
JOHN DOE SR. AND JANE DOE                               DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This cause is before the court on the separate motions of plaintiffs Dollar General Corporation and Dolgen Corp., Inc. (Dolgen) and of Dale Townsend, for temporary restraining order and preliminary injunction to enjoin all defendants from taking any further steps in the prosecution of the Doe defendants' pending lawsuit against them in the Tribal Court of the Mississippi Band of Choctaw Indians. Defendants, the Mississippi Band of Choctaw Indians, the Tribal Court of the Mississippi Band of Choctaw Indians and the Honorable Christopher A. Collins (in his official capacity as judge of the Tribal Court) (collectively the Tribal defendants), have filed their response in opposition to plaintiffs' motions, and the Doe defendants have separately responded. The court, having considered the memoranda and

supplemental memoranda of authorities submitted by the parties, together with attachments, concludes that the motion of Dolgen and Dollar Tree should be denied, and the motion of Townsend should be granted.

Plaintiff Dolgen operates a Dollar General store on trust land on the Choctaw Indian Reservation in Choctaw, Mississippi. Dolgen occupies the premises pursuant to a lease agreement with the Mississippi Band of Choctaw Indians (the Tribe) and a business license issued by the Tribe. At all relevant times, plaintiff Dale Townsend was employed as the store's manager. In or prior to 2003, the Tribe implemented a Tribal Youth Opportunity Program, described as a tribal work experience program pursuant to which tribal youth are placed with local businesses to gain work experience. According to the Tribe, pursuant to the program, the Tribe requested that Dolgen allow a juvenile tribe member to be placed at its store. Dolgen agreed, and allowed John Doe, a minor, to be placed in the store, and according to the Tribe and Doe defendants, Dolgen agreed it would supervise, control and report to the Tribe on John Doe's work at the store. Doe and his parents subsequently charged that in July 2003, Townsend, the manager, molested the minor John Doe while Doe was working there.

Based on the Does' allegation, counsel for the Tribe met with Townsend and advised the Tribe would be seeking an order of exclusion from the Tribal Court to permanently bar Townsend from

coming onto the reservation for any purpose. Townsend agreed he would consent to entry of such an order, allegedly based on representations by the Tribe's counsel that no further legal proceedings would be brought against him based on John Doe's allegations. However, on January 6, 2005, Doe and his parents filed suit in the Choctaw Tribal Court against Townsend, and against Dollar General and Dolgen (collectively Dolgen) seeking to recover actual and punitive damages. In that action, the Does seek to hold Dolgen vicariously liable for Townsend's actions, and further allege that Dolgen is liable for its own negligence in the hiring, training and supervision of Townsend.

In the face of a challenge by plaintiffs herein, the Tribal Court concluded that it had jurisdiction over the Does' complaint. The ruling was appealed to the Tribal Supreme Court, and was affirmed. Once the issue of tribal jurisdiction was exhausted in the tribal court system, Dolgen and Townsend brought the present action in this court seeking a determination that there is no tribal jurisdiction over the Does' complaint. The case is now before the court on Dolgen's and Townsend's separate motions to preliminarily enjoin further proceedings in the Tribal Court pending a final determination by this court of the Tribal Court's jurisdiction over the claims against them.

To prevail on a motion for preliminary injunction, a plaintiff must establish each of four elements: (1) a substantial

3

likelihood of success on the merits; (2) a substantial threat that the plaintiff will suffer irreparable injury; (3) that the threatened injury outweighs any harm the injunction might cause the defendant; and (4) that an injunction is not contrary to the public interest. Hoover v. Morales, 164 F.3d 221, 224 (5th Cir. 1998). The first issue, then, is whether plaintiffs have demonstrated a substantial likelihood of success on the merits of their assertion that the Tribal Court lacks jurisdiction over the Does' lawsuit.

Under the tribal exhaustion doctrine, subject to limited exceptions, tribal courts are to be given the first opportunity to determine the extent of their own jurisdiction where there is a colorable basis for tribal jurisdiction. See National Farmers Union Insurance Cos. v. Crow Tribe of Indians, 471 U.S. 845, 105 S. Ct. 2447, 85 L. Ed. 2d 818 (1985); Iowa Mutual Insurance Co. v. LaPlante, 480 U.S. 9, 107 S. Ct. 971, 94 L. Ed. 2d 10 (1987). However, the federal courts ultimately have jurisdiction to determine the limits of a tribal court's jurisdiction. Williams-Willis v. Carmel Financial Corp., 139 F. Supp. 2d 773, 777 (S.D. Miss. 2001) (citing Iowa Mutual, 480 U.S. at 14, 107 S. Ct. at 976, and Strate v. A-1 Contractors, 520 U.S. 438, 451, 117 S. Ct. 1404, 1411, 137 L. Ed. 2d 661 (1997)). Therefore, "[n]on-Indians may bring a federal common law cause of action under 28 U.S.C. § 1331 to challenge tribal court jurisdiction."

4

Boozer v. Wilder, 381 F.3d 931, 934 (9th Cir. 2004). "When reviewing a tribal court decision regarding tribal jurisdiction, this court reviews the tribal court's finding of facts for clear error and reviews questions of law de novo." FMC v. Shoshone-Bannock Tribes, 905 F.2d 1311, 1313-14 (9th Cir. 1990); see also Mustang Production Co. v. Harrison, 94 F.3d 1382, 1384 (10th Cir. 1996).

"In the absence of congressional legislation, . . . tribal governments retain regulatory authority over all matters falling within their inherent sovereignty." McArthur v. San Juan County, 497 F.3d 1057, 1068 (10th Cir. 2007). In Montana v. United States, 450 U.S. 544, 101 S. Ct. 1245, 67 L. Ed. 2d 493 (1981), the Supreme Court set forth the "general proposition" that "the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe." 450 U.S. at 565, 101 S. Ct. 1245, This is the "main rule" of Montana. The Court identified two exceptions to this general rule against tribal authority over nonmembers. First, "[a] tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements." Id. Second, "[a] tribe may ... exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some

5

direct effect on the political integrity, the economic security, or the health or welfare of the tribe." Id. at 566, 101 S. Ct. 1245.[1] Under the Montana analysis, therefore, because both Dolgen and Townsend are nonmembers of the Tribe, one of Montana's two exceptions must apply in order for the Tribe to assert regulatory authority over their actions. The Tribal Court concluded that both exceptions applied.

In the court's opinion, the conclusion of the Tribal Court that Montana's second exception, the "self governance" exception, applies, is not supportable. The Choctaw Supreme Court reasoned that this exception applies because "if the tribe cannot protect the health and welfare of its members by insuring the availability of a Tribal forum for disputes when it places a Tribal minor with a non-Indian commercial venture, who is on the Reservation solely

---

[1] The Tribe and the Does had argued in the Tribal Court that because the activities at issue in the Doe litigation occurred on Indian land, the Montana rule and its exceptions had no relevance, and that claims relating to the activities of nommembers on tribal lands were instead governed by the rule that tribal courts presumptively have jurisdiction over what occurs on tribal land. See Williams v. Lee, 358 U.S. 217, 79 S. Ct. 269, 3 L. Ed. 2d 251 (1959). The Choctaw Supreme Court concluded otherwise, and held that the Montana rule with its exceptions does apply to the activities of nonmembers even on tribal lands, so that one of the Montana exceptions must apply in order for the tribal courts to have jurisdiction for claims arising on reservation lands. Although the Tribe and Does maintain that this issue was in doubt following the Supreme Court's decision in Nevada v. Hicks, 533 U.S. 353, 121 S. Ct. 2304, 150 L. Ed. 2d 398 (2001), they now concede, in light of the Court's recent decision in Plains Commerce Bank v. Long Family Land and Cattle Co., Inc., 128 S. Ct. 2709 (2008), that Montana applies to Indian and non-Indian land alike.

6

as a result of a commercial lease with a Tribal entity, then this exception essentially becomes meaningless."

"Although broadly framed, [the second Montana] exception is narrowly construed." County of Lewis v. Allen, 163 F.3d 509, 515 (9th Cir. 1998) (en banc). This exception recognizes that Indians have "the right to make their own laws and be ruled by them" and thus "tribal assertion of this authority over nonmembers must be connected to that right of the Indians to make their own laws and be governed by them." Nevada v. Hicks, 533 U.S. 353, 361, 121 S. Ct. 2304, 2311 (2001). By way of example, "[t]he exception authorizes a tribe to do such things as punish tribe members, regulate their domestic relations and promulgate rules regarding tribal membership or inheritance within the tribe." Bugenig v. Hoopa Valley Tribe, 229 F.3d 1210, 1220 (9th Cir. 2000) (citing Strate, 520 U.S. at 459, 117 S. Ct. 1404).

As one court has observed, "virtually every act that occurs on the reservation could be argued to have some political, economic, health or welfare ramification to the tribe," and yet the second Montana exception obviously "was not meant to be read so broadly" as to cover every act that occurs on the reservation. Allen, 163 F.3d at 515. Instead, "when read 'in its proper context,' the exception allows for tribal jurisdiction only to the extent that such authority 'is necessary to protect self-government or to control internal relations.'" Bugenig, 229

F.3d at 1220 (citing Allen).  See also Allen, 163 F.3d at 515
(observing that "the tribal court plaintiff's status as a tribal
member alone cannot satisfy the second exception.  Nor is it
sufficient to argue ... that the exception applies because the
tribe has an interest in the safety of its members.").  In the
case at bar, in no sense can it reasonably be said that the Tribal
Court's assuming jurisdiction over the Does' claim against Dolgen
or Townsend is necessary to protect tribal self-government or
control internal relations.  Manifestly, this is a far broader
application of Montana's second exception than is warranted.

Turning to the first Montana exception, the Tribal Court
identified three bases for finding a consensual relationship which
it concluded supported an exercise of jurisdiction over both
Dolgen and Townsend.  The first was Dolgen's lease agreement with
the Tribe, in which Dolgen expressly consented to Tribal Court
jurisdiction over matters relating to the lease.  The second was
Dolgen's business license, issued to Dolgen by the Tribe.  The
third was Dolgen's alleged agreement to allow John Doe to be
placed in the Dollar General store as part of the Tribe's Youth
Opportunity Program.

As for Dolgen, the first putative "consensual relationship"
identified by the Tribal Court, namely Dolgen's lease with the
Tribe, is not a basis for tribal jurisdiction.  The consensual
relationship exception requires more than that there just be a

consensual relationship; the relationship must occur "through commercial dealing, contracts, leases, or other arrangements," *and* there must be a direct logical relationship between the consensual relationship and the injury. The parties to the lease agreement, Dolgen and the Tribe, expressly agreed that "[the lease] agreement and any related documents" would be construed according to the Choctaw Tribal Code and that "exclusive venue and jurisdiction shall be in the Tribal Court." However, the injury here did not arise out of the lease agreement between Dolgen and the Tribe. As Dolgen correctly points out, "<u>Montana</u>'s consensual relationship exception requires that the tax or regulation imposed by the Indian tribe have a nexus to the consensual relationship itself," <u>Atkinson Trading Co. v. Shirley</u>, 532 U.S. 645, 656, 121 S. Ct. 1525 (2001), and thus, "[a] nonmember's consensual relationship in one area ... does not trigger tribal civil authority in another–it is not 'in for a penny, in for a pound,'" <u>id</u>. (citations omitted).

In the court's opinion, the same is true of the business license proposition; the required nexus is lacking. The Tribal Court wrote:

> It strains credulity to somehow assert that the licensee is not accountable within the legal structure of the sovereign, who granted the license in the first instance, for an alleged wrong that took place at the very premises where the licensed commercial activities took place.

Simply because an injury occurred on the premises of the business for which the license was granted is not a basis for concluding

9

that the licensee impliedly consented to tribal jurisdiction.
This is a more expansive assertion of tribal jurisdiction than
Montana's "consensual relationship" will countenance.

The Tribal Court also concluded there was a consensual
employment-type relationship between Doe and Dolgen, i.e., that
John Doe was effectively an employee, and that this relationship
qualifies as a consensual relationship supporting tribal
jurisdiction. The court reasoned as follows:

> [T]here is also an (unwritten) consensual agreement
> between the Tribe and Dollar General. The essence of
> such an agreement being that when the Tribe places a
> Tribal minor with Dollar General for job training
> purposes, that it would be mutually understood that any
> issues relative to Dollar General's relationship to the
> minor regarding such things as training, wages or
> potential harm would be resolved in Tribal court.

Dolgen objects that it had no such understanding, and it maintains
there is no evidence in the record to support a conclusion that
there was any agreement between Dolgen and the Tribe for placement
of minors for training or as to the nature of John Doe's placement
and what it entailed.

On the other hand, consistent with the Tribal Court's ruling,
the Tribe and Does herein argue that both John Doe and the Tribe
had entered into voluntary consensual relationships with Dolgen
within the meaning of Montana's consensual relationship exception
based on John Doe's status as a student intern or apprentice
working under the supervision and control of the Dollar General
store and its designated supervisor, Townsend. Defendants note

10

that this arrangement arose from Dolgen's voluntary agreement to accept placement of the minor tribal member on its premises as part of the Tribal Youth Opportunity Program and to assign Townsend to act as his supervisor in carrying out the minor's work and the minor's agreement to accept that placement. The Tribe and Does suggest that this arrangement was the type of commercial or "other arrangement" that fits squarely within Montana's consensual relationship exception.

In Macarthur v. San Juan County, the Tenth Circuit held that "Montana's consensual relationship exception applies to a nonmember who enters into an employment relationship (on Indian lands) with a member of the tribe." 497 F.3d 1057, 1071 (10th Cir. 2007).[2] Cf. Plains Commerce Bank, 128 S. Ct. at 2723 (observing

---

[2] The court also recognized that the regulatory (and hence adjudicatory) authority of tribes, at least that which is derived solely from their inherent sovereignty, is limited to the reservation's borders. Macarthur v. San Juan County, 497 F.3d 1057, 1071 (10th Cir. 2007) (citations omitted). The court wrote:
> The notion that inherent sovereignty ceases at the reservation's borders is consistent with the Court's statement in [United States v. Wheeler, 435 U.S. 313, 326, 98 S. Ct. 1079, 55 L. Ed. 2d 303 (1978)], that "the dependent status of Indian tribes within our territorial jurisdiction is necessarily inconsistent with their freedom independently to determine their external relations." 435 U.S. at 326, 98 S. Ct. 1079. It would simply strain credulity to hold that the Navajo Nation may exercise regulatory authority over any employer in the United States so long as the individual or entity employs an enrolled member of the tribe. Therefore, we hold that a tribe only attains regulatory authority based on the existence of a consensual employment relationship when the relationship exists between a member of the tribe and a nonmember individual or entity

11

that "[t]he logic of Montana is that certain activities on non-Indian fee land (say, a business enterprise employing tribal members) ... may intrude on the internal relations of the tribe or threaten tribal self-rule").  Dolgen acknowledges that John Doe may qualify as an employee for some purposes, as for example, workers' compensation coverage.  See Walls v. North Mississippi Medical Center & U.S. Fidelity & Guar. Co., 568 So. 2d 712, 713 (Miss. 1990) (individual participating in student intern program and performing services in defendant hospital, at the direction of the hospital's nurses, was an apprentice employee of the hospital law for purposes of workers' compensation benefits).  It submits, however, that he was not really an employee in the sense of there being a genuine consensual employment relationship.³  Rather, the Tribal Youth Opportunity Program in which John Doe participated, was nothing more than "a civic program designed by the Tribe for

---

    employing the member within the physical confines of the reservation.
Id. at 1071-1072.

   ³    Dolgen also argues that for the consensual relationship exception to apply, there must have been an express consent to tribal jurisdiction.  However, there is no such requirement.  See Plains Commerce Bank, 128 S. Ct. 2724 ("Consequently, (tribal) laws and regulations may be fairly imposed on nonmembers only if the nonmember has consented, either expressly or by his action").  What is instead required is that the circumstances of the parties' relationship manifest at least an implied consent to tribal jurisdiction.  See Plains Commerce Bank, supra; Atkinson Trading Co., Inc. v. Manygoats, No. CIV 02-1556-PCT-SMM, 2004 WL 5215491, 8 (D. Ariz. March 17, 2004) (Montana requires consent to jurisdiction, either expressed, or implied by the parties' behavior...").

12

the benefit of the Tribe, not Dollar General, through the provision of job training to its younger members." The Tribe and the Does, on the other hand, argue that "Dollar General financially benefitted from its decision to participate in the Tribe's Youth Opportunity Program by receiving work from John Doe that Dollar General didn't have to pay for."

If John Doe performed services for Dolgen that had value to Dolgen such that Dolgen enjoyed a commercial benefit from its agreement to allow his placement in its store, then it would be reasonable to conclude that there existed the kind of consensual relationship required by Montana's first exception. In the court's opinion, the fact that he was not in a traditional employment relationship is not necessarily determinative. If, on the other hand, Dolgen has accurately portrayed the arrangement as its merely gratuitously allowing the Tribe to place John Doe for the benefit of the Tribe and John Doe, not Dolgen, through the provision of job training, then one would be hard pressed to find the kind of "commercial dealing, contract, lease or other (similar) arrangement"[4] contemplated by Montana's first exception. See County of Lewis v. Allen, 141 F.3d 1385 (9th Cir) ("[T]he 'consensual relationships with the tribe or its members' addressed by this exception–'commercial dealing, contracts, leases, or other arrangements,'–are generally commercial relationships entered into by the nonmember in order to obtain some benefit from the tribe or

---

[4] The "other arrangement" to which the exception refers must also be of a commercial nature. See Boxx v. Long Warrior, 265 F.3d 771, 776 (9th Cir. 2001).

13

tribal member."), vacated on other grounds, 149 F.3d 1228 (9th Cir. 1998).

It is clear that John Doe was not a paid employee of the Dollar General store, but was instead an intern or apprentice of some sort.  It is also undisputed that a purpose of his placement at the Dollar General store was so that he could receive job training of some sort, or perhaps at least be exposed to a work environment.  The more pertinent issue for jurisdictional purposes, however, is whether John Doe actually performed or was expected to perform services that benefitted Dolgen, i.e., whether Dolgen's participation was essentially gratuitous or whether it received a commercial benefit from the arrangement.

Dolgen argues that there is no evidence in the record to support the Tribal Court's conclusion that this was a consensual employment relationship, or its explicit conclusion that the parties would have mutually understood from the nature of their relationship that "any issues relative to Dollar General's relationship to the minor regarding such things as training, wages or potential harm would be resolved in Tribal court...."  Dolgen concludes that because there is no such evidence, there is no basis upon which this court may conclude that the Tribal Court has properly assumed jurisdiction over the case.  However, as defendants point out, the Tribal Court's decision was rendered in the context of a motion to dismiss in which the court accepted as true the Does' jurisdictional allegations, including those relating to John Doe's employment-type relationship with Dolgen.

14

There is nothing to indicate that Dolgen challenged the Does' factual allegations or that it undertook to show that the relationship was not mutually beneficial to all the parties, including Dolgen – nor has it done so here.

Dolgen is now before this court seeking to enjoin the Tribal Court's exercise of jurisdiction, and it is thus Dolgen's burden to establish a substantial likelihood of success on the merits of its own assertion that the Tribal Court lacks jurisdiction. The burden is thus on Dolgen to demonstrate that the Montana exception does not apply. Under the circumstances, Dolgen cannot sustain that burden solely by reliance on the absence of evidence in the Tribal Court record.[5]

Dolgen argues additionally and/or alternatively that even if its alleged arrangement with the Tribe and John Doe could be legitimately considered a consensual relationship under Montana, there still is no basis for tribal jurisdiction because the tort that is the subject of the Does' complaint did not arise out of the putative consensual relationship between Dolgen and the Tribe

---

[5] The Tribe and Does have also argued that regardless of whether Dolgen expected to derive a direct benefit in the form of services from John Doe as part of its agreement to allow John Doe's placement in its store (in other words, that even if the arrangement was intended only to provide job training to John Doe and not necessarily for Dolgen to receive the benefit of work performed by John Doe), Dolgen still derived what may fairly be considered a commercial benefit from the relationship as a result of the good will or "good publicity" it experienced on the reservation and with members of the Tribe on account of its participation in the Tribal Youth Opportunity Program. In the court's opinion, this is far too tenuous a commercial benefit to support the conclusion that Montana's consensual relationship applies.

15

or John Doe.  As this argument suggests, "[t]he existence of a consensual relationship is not alone sufficient to support tribal jurisdiction.  The tribal exercise of authority must also take the form of taxation, licensing, or 'other means' of regulating the activities of the nonmember, and this regulation must have some nexus to the consensual relationship." Farmers Union Oil Co. v. Guggolz, No. CIV 07-1004, 2008 WL 216321, 4-5 (D.S.D. Jan. 24, 2008).  Thus, as the Supreme Court made clear in Strate, Montana's consensual relationship exception does not apply to a purely accidental encounter between two strangers but requires a nexus between a preexisting consensual commercial relationship between the parties and the personal injury claim.  See Plains Commerce Bank, 491 F.3d at 886-87, rev'd on other grounds, 128 S. Ct. 2709.  See also Atkinson Trading Co. v. Shirley, 532 U.S. 645, 656, 121 S. Ct. 1825, 149 L. Ed. 2d 889 (2001)("Montana's consensual relationship exception requires that the tax or regulation imposed by the Indian tribe have a nexus to the consensual relationship itself.").  Here, notwithstanding Dolgen's argument to the contrary, the court is of the opinion that the subject matter of the Does' lawsuit, at least to the extent the Does charge that Dolgen was itself negligent in the hiring, training and supervision of Townsend, arises directly from Dolgen's consensual relationship with the Tribe and John Doe.

Based on the foregoing, the court concludes that Dolgen has failed to demonstrate a substantial likelihood of success on the merits of its assertion that the Tribal Court lacks jurisdiction

16

over the Does' lawsuit and therefore, Dolgen's motion for preliminary injunction will be denied.

A contrary result is reached as to Dale Townsend. As Townsend notes in his own motion for injunctive relief, each of the putative consensual relationships identified by the Tribal Court was a consensual relationship between the Tribe and the Does *with Dolgen*. None involved a consensual relationship between the Tribe or the Does *and Townsend*. He concludes, therefore, that the Tribal Court has no jurisdiction over him. The court agrees.[6]

In Macarthur v. San Juan County, 497 F.3d 1057 (10th Cir. 2007), the court concluded that while the claims of two tribal members against their employer, the San Juan County Health Services District (SJHSD), was a consensual relationship under the first Montana exception so that the tribal court had jurisdiction over the employee's claim against SJHSD. The court held, however, that tribal jurisdiction was lacking over the employees' claims against a number of other defendants (employees of the SJHSD) because the plaintiffs contractual employment relationships were with the SJHSD only; the plaintiffs "did not enter into a contractual employment relationship with any other Defendant." The court wrote:

> While some of the Defendants admittedly played a tangential role in SJHSD's employment relationships with the two, none of the Defendants, other than SJHSD,

---

[6] Townsend also argues that the order of exclusion entered by the Tribal Court waived any jurisdiction the Tribe may otherwise have had over Townsend and that the Tribe is now estopped from attempting to assert jurisdiction over him. The court finds it unnecessary to address this argument.

17

> entered into the type of consensual relationship with
> Mr. Riggs or Mr. Dickson sufficient to fall within the
> exception. In other words, it is self-evident that none
> of them entered into "commercial dealing, contracts,
> [or] leases" with either [plaintiff]. *And being one's
> coworker or superior standing alone cannot possibly
> constitute the type of "other arrangements" the Supreme
> Court had in mind in Montana*. If those relationships
> were sufficient, "the exception would swallow the rule."
> Atkinson Trading Co., 532 U.S. at 655, 121 S. Ct. 1825.

497 F.3d at 1072. This reasoning applies equally here. There is no conceivable basis upon which the Tribal Court may exercise jurisdiction over the claims against Townsend, and accordingly, all defendants will be permanently enjoined from further proceeding against him in the Tribal Court.[7]

Based on the foregoing, it is ordered that Dolgen's motion for temporary restraining order and/or preliminary injunction is denied. It is further ordered that inasmuch as the absence of Tribal Court jurisdiction over Dale Townsend is manifest,

---

[7] While Townsend has moved only for a preliminary injunction and thus would normally be required to establish each of the four elements for securing preliminary injunctive relief, see supra 3-4, defendants herein have no basis for objecting to a final determination by this court of this jurisdictional issue, as they themselves requested in their response that the court decide the issue on the merits.

18

defendants are enjoined from further proceeding on their claims against him in the Tribal Court.

SO ORDERED this 19th day of December, 2008.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE